**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIO GUTIERREZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　Defendant. | ) Case No. ED CV 10-1401-SP<br>)<br>)<br>) **MEMORANDUM OPINION AND**<br>) **ORDER**<br>)<br>)<br>)<br>)<br>)<br>) |

**I.**

**INTRODUCTION**

On September 15, 2010, plaintiff Mario Gutierrez filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Docket No. 1. Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Docket Nos. 15, 16.

Pursuant to a September 17, 2010 case management order, the parties submitted a detailed, 20-page joint stipulation for decision on May 17, 2011. Docket No. 19. The court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, inter alia, the parties' joint stipulation and the administrative record, the court concludes that, as detailed herein, there is substantial evidence in the record, taken as a whole, to support the decision of the Administrate Law Judge ("ALJ"). Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was sixty years old on the date of his November 20, 2009 administrative hearing, has a high school education and a law degree from Mexico. *See* Administrative Record ("AR") at 25, 28, 142, 160. His past relevant work includes employment as a truck driver. *Id.* at 29, 156, 202.

On February 20, 2008, plaintiff filed applications for DIB and SSI, alleging that he has been disabled since February 2, 2007 due to rectal fistula. *See* AR at 15, 46, 135-39, 155. Plaintiff's applications were denied initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 42, 43, 44, 45, 46-50, 51, 52-56, 57.

On November 20, 2009, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 25, 28-39, 41. On January 5, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 15-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability. AR at 17.

At step two, the ALJ found that plaintiff suffers from severe impairments consisting of "impairments of the gastrointestinal and musculoskeletal systems." AR at 17 (emphasis omitted).

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically

1  equal the severity of any listing set forth in the Social Security regulations.[1]  AR at
2  19.
3        The ALJ then assessed plaintiff's residual functional capacity[2] ("RFC") and
4  determined that he can perform medium work.  Specifically, the ALJ found that
5  plaintiff can: "lift and/or carry 25 pounds frequently and 50 pounds occasionally";
6  and "occasionally perform postural activities including bending, stooping, squatting,
7  crouching, crawling, and kneeling from one-third to two-third in a normal eight-hour
8  workday."  AR at 19 (emphasis omitted).
9        The ALJ found, at step four, that plaintiff is capable of performing past
10 relevant work as a truck driver.  AR at 23.  Thus, the ALJ concluded that plaintiff
11 was not suffering from a disability as defined by the Act.  *Id.* at 15, 24.
12       Plaintiff filed a timely request for review of the ALJ's decision, which was
13 denied by the Appeals Council.  AR at 1-3, 7.  The ALJ's decision stands as the final
14 decision of the Commissioner.

## III.

## STANDARD OF REVIEW

17       This court is empowered to review decisions by the Commissioner to deny
18 benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
19 Administration must be upheld if they are free of legal error and supported by
20 substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).
21 But if the court determines that the ALJ's findings are based on legal error or are not

---

[1]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2]  Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

(1) whether the ALJ properly considered all of the relevant medical evidence of record in this case; and

(2) whether the ALJ properly considered plaintiff's subjective complaints and properly assessed plaintiff's credibility. Joint Stipulation ("JS") at 3, 3-13, 13-18.

## V.
## DISCUSSION

A.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff contends that the ALJ, in determining that plaintiff is not disabled, erred by "fail[ing] to properly consider the relevant medical evidence of record." JS

at 4. Specifically, plaintiff argues that the medical records show that he "has been experiencing rectal/anal problems since his alleged date of onset of February 2, 2007, including pain and bleeding consistently through the decision date." *Id.* Plaintiff maintains that the medical evidence demonstrates he suffers from a "combination of . . . physical impairments" that render him disabled, namely, "rectal/anal impairments, severe lumbar spinal degenerative disc disease and degenerative joint disease, and . . . severe vision impairment" due to glaucoma. *Id.* at 4, 7.

        1.      <u>Pertinent Law</u>

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted,

the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons."). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

### 2. Dr. Javier R. Rios

The ALJ properly rejected the opinion of Javier R. Rios, M.D. for two reasons. First, the ALJ properly rejected Dr. Rios's opinion because it was not supported by the objective evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physician's opinion which was unsupported by medical findings, personal observations, or test reports); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Here, the ALJ "considered [Dr. Rios's opinion that] the claimant [is] 'permanently disabled' due to rectal fistula," but the ALJ found that this conclusion was contrary to the medical evidence which shows that plaintiff's "medically determinable impairment of rectal fistula healed 100%." AR at 23. Further, the objective medical record supports the ALJ's conclusion. For instance, plaintiff was initially prescribed ointments and suppositories (*see id.* at 255-56, 257, 258, 259, 260, 261-62, 263, 264, 265) to treat his anal fissure, and by June 14, 2007, Edward Steven Tyau, M.D. reported that the "[f]issure appears to be completely healed." *Id.* at 556. Plaintiff began complaining of anal pain again in September 2007 (*id.* at 271), and on October 25, 2007 plaintiff underwent anal fistulotomy without complications. *Id.* at 275; *see id.* at 276 (On November 5, 2007,

1  following the surgery, Dr. Tyau noted on examination that the "area is healing well
2  . . . [with] 'rawness' to the edges [but] . . . [h]e should be back to normal duties."),
3  277 (On November 28, 2007, Dr. Tyau noted on examination that the fistulotomy
4  site is "well healing and almost 90 % healed."), 279 (On January 28, 2008, Dr. Tyau
5  noted on examination that the fistulotomy site is 90% healed, and plaintiff was
6  advised that "he may have [continued] discomfort even after it heals, as his
7  discomfort may be chronic as opposed to his hemorrhoids and/or fistula"), 283 (On
8  February 21, 2008, Dr. Tyau noted that the rectal exam revealed external
9  hemorrhoid, internal hemorrhoid, and tenderness to the fistulotomy site "but it is
10 healed 100 % now"). In March 2008, Ngoc Van Nguyen, M.D. discovered a large
11 broad-based anal lesion/ulcer and in June 2008 plaintiff underwent a
12 sphincterotomy. *Id.* at 286, 313. On July 22, 2008, Dr. Nguyen noted that the area
13 is "about 85 % healed" and opined that plaintiff's "pain is not from [the] perianal
14 area anymore but [rather is] more musculoskeletal pain." *Id.* at 471.
15     The ALJ also considered Dr. Rios's finding that plaintiff is totally and
16 permanently disabled due to severe degenerative disease in the lumbar spine and
17 fractures resulting in persistent pain. AR at 23 (citing *id.* at 399). The ALJ likewise
18 rejected this opinion because it was contrary to the medical evidence. Although
19 plaintiff suffered from degenerative changes in his lower back (*id.* at 22, 389-91,
20 619-23), consultative examining physician Bunsri T. Sophon, M.D. found that
21 plaintiff possessed "full range of motion of the cervical . . . [and] lumbar spine" (*id.*
22 at 409), and "does not have significant physical impairment" or "functional
23 limitations." *Id.* at 411. Dr. Sophon's opinion was based on a physical examination,
24 plaintiff's medical history, and review of the medical record. *Id.* at 407-12; *see*
25 *Magallanes*, 881 F.2d at 751 (examining physician's opinion may constitute
26 substantial evidence if the "nontreating physician relies on independent clinical
27 findings that differ from the findings of the treating physician" (internal quotation
28 marks and citation omitted)).

Second, although Dr. Rios opined that plaintiff is totally and permanently disabled (AR at 399), a treating physician's non-medical opinion on whether the claimant is disabled "is not entitled to special significance." *Boardman v. Astrue*, 286 Fed. App'x 397, 399 (9th Cir. 2008) ("The ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance."); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). In other words, Dr. Rios's non-medical opinion that plaintiff is unable to work is not binding on the Commissioner. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." (internal quotation marks and citation omitted)); 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(e)(1) (same). Indeed, under the regulations, opinions on ultimate disability arguably do not constitute a valid medical opinion. *See* 20 C.F.R. § 404.1527(e) ("Opinions on some issues, such as [that you are 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); 20 C.F.R. § 416.927(e) (same). Therefore, the ALJ was not required to explicitly detail his reasons for rejecting Dr. Rios's opinion on plaintiff's ultimate disability. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986) (Because "opinions by medical experts regarding the ultimate question of disability are not binding[,] . . . [the Commissioner] was not obliged to explicitly detail his reasons for rejecting the [treating physician's] opinion.").
///

8

### 3. Diego H. Sevilla, P.A.-C

The ALJ properly discounted the opinion of Diego H. Sevilla, P.A.-C – a physician's assistant at the same clinic as Dr. Rios. *See* AR at 23, 433 (on a prescription note, dated February 18, 2008, PA Sevilla opined that plaintiff is permanently disabled because of rectal fistula). A physician's assistant is not an "acceptable medical source" for establishing a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Because physician's assistants are not "acceptable medical sources," their opinions are not entitled to the standard of review afforded physicians; instead, the opinions of physician's assistants are reviewed under the same standard afforded lay witnesses. *See Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). Thus, if an ALJ wishes to discount such opinions, the ALJ must give reasons that are germane to each witness for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see infra* Part V.B.3. Here, the ALJ did, in fact, provide reasons germane to PA Sevilla for rejecting his opinion. First, the ALJ correctly found that PA Sevilla is "not . . . an acceptable medical source," and thus properly gave his opinion "less weight than other qualifying medical source opinions." AR at 23. The ALJ also found that PA Sevilla's opinion suffered the same defect as Dr. Rios's opinion – namely, that it is conclusory on the ultimate issue of disability which is reserved for the Commissioner. *Id.* Thus, the ALJ did not err in discounting PA Sevilla's opinion.

### 4. Dr. Edward Steven Tyau and Dr. Ngoc Van Nguyen

Plaintiff contends that although the "ALJ mentioned some of [the medical reports by Dr. Tyau and Dr. Nguyen] in his unfavorable decision," the ALJ "completely misstates the medical evidence" by finding that "[p]laintiff's anal/rectal problem was 'completely' healed in early 2008, and thus was 'non severe' in that it lasted less than 12 months." JS at 6 (citing AR at 18). Plaintiff's argument lacks merit for two reasons. First, the ALJ is not required to discuss at length medical evidence that he did not reject. *See Howard ex rel. Wolff v. Barhart*, 341 F.3d 1006,

9

1012 (9th Cir. 2003). Instead, the ALJ must provide an explanation only when he rejects "significant probative evidence." *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (citation omitted). Here, the ALJ properly considered and adopted the findings of Dr. Tyau and Dr. Nguyen in his decision. *See, e.g.*, AR at 17 (adopting Dr. Tyau's opinion, the ALJ stated that "[b]y November 2007, the claimant appeared to be healing well and was informed he would be able to return to normal duties shortly").

        Second, contrary to plaintiff's contention, the ALJ did not misstate the medical evidence and his findings were consistent with the objective evidence. For example, the ALJ's finding that plaintiff's anal/rectal condition was completely healed by early February 2008 is wholly consistent with Dr. Tyau's February 21, 2008 report. *See* AR at 283 (Dr. Tyau reported that there is "tenderness to [the] [fistulotomy] site but it is healed 100% now"). In addition, the objective medical evidence corroborates the ALJ's finding that plaintiff's condition was not continuous and did not last twelve months or more. Indeed, the medical record documents three distinct periods of anal complications lasting no more than twelve months or more at a time: (1) the first period of anal pain lasted approximately four months – plaintiff first complained of rectal fistula in February 2, 2007, but by June 14, 2007 the fissure was "completely healed" after ointment and suppository treatments (*id.* at 556); (2) even assuming plaintiff began experiencing anal pain again in June 2007, the second period of anal pain lasted no more than five months – the fistula was rectified by October 25, 2007 after anal fistulotomy (*id.* at 271, 276); and (3) the third period of anal complications lasted approximately four months – on March 25, 2008, Dr. Nguyen diagnosed plaintiff with anal ulcer, but by July 22, 2008, after sphincterotomy, Dr. Nguyen noted that the area is 85% healed and opined that plaintiff's "pain is not from [the] perianal area anymore but [rather is] more musculoskeletal pain" (*id.* at 471). Thus, the ALJ did not err in assessing the opinions of Dr. Tyau and Dr. Nguyen, and substantial evidence supports the ALJ's

finding that plaintiff's anal complications did not last continuously for twelve months or more.

### 5. Dr. Leslie Bruce-Lyle

Plaintiff argues that the ALJ erred by finding that "[p]laintiff's glaucoma is 'non-severe', despite the fact that [Leslie Bruce-Lyle, M.D.] . . . stated [in the Vision Impairment Questionnaire] very clearly that [p]laintiff's vision problem impairs his night driving ability." JS at 7 (internal citations omitted). However, the ALJ read and properly considered the totality of the Vision Impairment Questionnaire completed by Dr. Bruce-Lyle. *See* AR at 18. Notwithstanding the effect plaintiff's glaucoma has on his ability to drive at night (*id.* at 643), Dr. Bruce-Lyle found that plaintiff has 20/20 corrected visual acuity in both eyes (*id.* at 640) and his prognosis is good for both eyes (*id.* at 639-40). Thus, the ALJ properly assessed Dr. Bruce-Lyle's opinion and did not err in finding plaintiff's glaucoma to be non-severe.

Accordingly, the court finds that the ALJ's evaluation of the medical evidence is free from legal error and is supported by substantial evidence.

## B. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly consider his subjective complaints and properly assess his credibility. *See* JS at 13-16. Specifically, plaintiff maintains that "the ALJ failed to properly consider his subjective statements of record . . . as well as those of [his] wife." *Id.* at 13, 16.

### 1. The ALJ Must Provide Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints

Plaintiff carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton*, 331 F.3d at 1040. But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] claimant

1 need not present clinical or diagnostic evidence to support the severity of his pain.").

2 Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. *See generally* AR at 15-24. Thus, the ALJ's basis for rejecting plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

### 2. The ALJ Properly Rejected Plaintiff's Subjective Complaints

The court is persuaded that the ALJ provided clear and convincing reasons for rejecting plaintiff's credibility. Four reasons guide the court's determination.

First, the ALJ found that the objective medical evidence does not support plaintiff's alleged degree of disability. AR at 21-23. Apart from the unsubstantiated opinion of Dr. Rios – that plaintiff is permanently disabled due to rectal fistula and severe degenerative disease of the lumbar spine (*id.* at 399) – plaintiff cannot identify any objective evidence that supports his claims of total disability. *See generally* JS at 4-7, 13-16. The ALJ properly rejected Dr. Rios's opinion because the medical records indicate that plaintiff's rectal fistula/fissure problems were rectified by surgery. AR at 32; *see supra* Part V.A.2; *Batson*, 359 F.3d at 1195. Furthermore, the objective evidence does not support Dr. Rios's statement that plaintiff is totally and permanently disabled due to fractures and severe degenerative disease in the lumbar spine. AR at 23, 399. Although plaintiff suffered from degenerative changes in his lower back (*id.* at 22, 389-91, 619-23), Dr. Sophon

found that plaintiff possessed "full range of motion of the cervical . . . [and] lumbar spine" (*id.* at 409), and "does not have significant physical impairment" or "functional limitations." *Id.* at 411. Dr. Sophon's opinion was based on a physical examination, plaintiff's medical history, and review of the medical record. *Id.* at 407-12; *see Magallanes*, 881 F.2d at 751 (examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician" (internal quotation marks and citation omitted)). Certainly, a lack of objective evidence supporting plaintiff's symptoms cannot be the sole reason for rejecting plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). But it can be one of several factors used in evaluating the credibility of plaintiff's subjective complaints. *Id.*

Second, the ALJ properly discounted plaintiff's asserted limitations based upon his inconsistent statements regarding his abilities. *See Tonapetyan*, 242 F.3d at 1148 (ALJ may engage in ordinary techniques of credibility evaluation, such as considering inconsistencies in claimant's testimony). In this case, the ALJ found plaintiff's "insist[ence] on the use of a Spanish interpreter at the hearing" to be inconsistent with his ability to speak and understand English. AR at 20. The ALJ found plaintiff incredible because: (1) plaintiff has reported earnings in the United States as far back as 1970 and plaintiff admitted living in the United States continuously since 1994; (2) plaintiff took and passed all of the naturalization tests in English; and (3) plaintiff stated at the time of the initial filing that he can speak, read, and write English. *Id.* Thus, this was a proper reason for rejecting plaintiff's credibility, as the record is replete with evidence indicating that plaintiff's English is not limited and plaintiff was not in need of an interpreter. *See id.* at 34, 37, 150, 154, 161.

Third, the ALJ rejected plaintiff's statements based upon Dr. Sophon's observation during the examination on October 1, 2009 that plaintiff exaggerated his

1  symptoms of pain. AR at 22. This is a clear and convincing reason. *See*
2  *Tonapetyan*, 242 F.3d at 1148 (ALJ properly discredited claimant's subjective
3  complaints based on her tendency to exaggerate her symptoms). Here, the ALJ
4  noted Dr. Sophon's observation that plaintiff did not "use full effort in performing
5  the grip strength test on the right." AR at 22, 409. Further, although plaintiff
6  complained of severe pain in his back and lower extremity, Dr. Sophon noted that
7  plaintiff "[sat] and [stood] with normal posture"; there is "no evidence of tilt or list";
8  plaintiff "[sat] comfortably during the examination"; plaintiff "use[d] no assistive
9  devices to ambulate and [was] able to get on and off the examining table without
10 difficulty"; plaintiff's "gait is normal"; and plaintiff was able to "rise[] from a chair
11 without difficulty." *Id.*

12        Fourth, the ALJ properly discredited plaintiff's subjective complaints as
13 inconsistent with plaintiff's daily activities. *See Reddick*, 157 F.3d at 722 ("Only if
14 the level of activity were inconsistent with Claimant's claimed limitations would
15 these activities have any bearing on Claimant's credibility."). Here, the ALJ found
16 that "despite [plaintiff's] impairments, he has engaged in a somewhat normal level
17 of daily activities and interaction." *Id.* at 21. Further, the ALJ stated that plaintiff
18 "described everyday activities that included walking, reading, being on the
19 computer, driving, shopping, watching television, and socializing" (*id.* at 20), and
20 noted that "the physical and mental capabilities requisite to performing [these] tasks
21 . . . as well as the social interactions replicate those necessary for obtaining and
22 maintaining employment." *Id.* at 21; *see Gonzalez v. Sullivan*, 914 F.2d 1197, 1201
23 (9th Cir. 1990) (holding that daily activities may not be relied upon to support an
24 adverse credibility determination unless the ALJ makes an explicit finding to the
25 effect that plaintiff's ability to perform those activities translated into the ability to
26 perform appropriate work activities on an ongoing and daily basis). Assuming,
27 however, that the ALJ erred by failing to specifically indicate how plaintiff's daily
28 activities translated to his ability to perform work activities, such error was harmless.

*See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability). As discussed above, there remains "'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

Accordingly, the court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective complaints of pain and limitation.

### 3. The ALJ Properly Rejected Plaintiff's Wife's Statements

Plaintiff argues that the ALJ failed to properly consider the statements made by his wife ("Mrs. Gutierrez") in a third-party function report on June 17, 2008. JS at 13, 16.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that Commissioner will consider evidence from "non-medical sources[,]" including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy[,]" in determining how a claimant's impairments affect his or her ability to work); 20 C.F.R. § 416.913(d)(4) (same). The ALJ may only discount the testimony of lay witnesses if he provides specific "reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919; *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, the court finds, for two reasons, that the ALJ properly rejected Mrs.

1  Gutierrez's statements in the third-party function report. First, the ALJ properly
2  discounted Mrs. Gutierrez's statements based upon the fact that "her statements are
3  not supported by the clinical or diagnostic medical evidence." AR at 21; *see Bayliss*
4  *v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical
5  evidence constitutes germane reason); *Lewis*, 236 F.3d at 511 ("One reason for
6  which an ALJ may discount lay testimony is that it conflicts with medical evidence."
7  (citation omitted)); *Vincent*, 739 F.2d at 1395 ("The ALJ properly discounted lay
8  testimony that conflicted with the available medical evidence."); *but see Bruce v.*
9  *Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (improper to discredit testimony of
10 claimant's wife as not supported by medical evidence in record).[3]  Second, because
11 the ALJ provided clear and convincing reasons for not finding plaintiff's statements
12 entirely credible (*see supra* Part V.B.2), the ALJ's rejection of Mrs. Gutierrez's
13 similar statements was proper. In particular, the ALJ discounted Mrs. Gutierrez's
14 statements because her "answers are almost identical to [plaintiff's] answer[s] in his
15 function report." AR at 21; *see Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir.

---

[3] In so holding, the Ninth Circuit in *Bruce* relied on its prior decision in *Smolen*, which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms because, in doing so, the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Bruce*, 557 F.3d at 1116 (citing *Smolen*, 80 F.3d at 1289). The Ninth Circuit, however, did not address its earlier decisions in *Bayliss*, *Lewis*, and *Vincent*, in which, as discussed above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511 (citing *Vincent*, 739 F.2d at 1995); *see also Bayliss*, 427 F.3d at 1218. Accordingly, although *Bruce* is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of *Bayliss*, *Lewis*, or *Vincent* was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is unclear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. According, the court shall treat those earlier holdings as still being good law.

2009) (if an ALJ provides clear and convincing reasons for rejecting the claimant's own subjective complaints, then the ALJ may properly discount similar statements made by lay witnesses).

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: October 17, 2011

_____

HON. SHERI PYM
UNITED STATES MAGISTRATE JUDGE